ANNA BISSELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24784. Promulgated June 4, 1931.

*J. S. Seidman*, *C. P. A.*, and *F. E. Seidman*, *C. P. A.*, for the petitioner.

*John D. Kiley*, *Esq.*, for the respondent.

574

OPINION.

LOVE: The question in this proceeding is whether petitioner is entitled to deduct from her gross income for the year 1922, either as a bad debt or as a loss sustained, that part of her investment made in 1916 in certain Imperial Russian Government bonds which she in 1922 for the first time ascertained to be worthless and charged off on her books as such during the taxable year.

At the hearing petitioner obtained leave to amend her petition so as to claim the charge-off in the amount of $18,450 either as a bad debt deduction under section 214 (a) (7) of the Revenue Act of 1921, or, in the alternative, as a loss sustained under section 214 (a) (5) of the same act. Petitioner has briefed the case from the standpoint of both her paramount and alternative con-

tentions, respectively. Counsel for the respondent in his brief did not discuss petitioner's alternative contention, but argued solely the proposition that, "if deductible at all, the deduction must fall within the provisions of section 214 (a) (7) *supra*," and that under this section it could not be held that the bonds in the instant case were ascertained to be worthless during the taxable year 1922, for the reason that the Board had heretofore determined, in the cases of *Murchison National Bank*, 1 B. T. A. 617, and *Samuel Bird*, 4 B. T. A. 259, that investments in both the bond issues here in question were worthless and deductible in the year 1920.

In her reply brief, petitioner points out that respondent has argued the case solely from the standpoint of "bad debts" and that, therefore, "as to the loss aspect, the situation must be regarded in the nature of a demurrer by the respondent, since he has entered no defense" and in that regard petitioner prays that judgment be entered for her. At the hearing, however, the respondent filed a general denial to petitioner's alternative assignment of error. The mere failure of the respondent to discuss such alternative assignment of error in his brief does not *ipso facto* entitle petitioner to judgment thereon. Petitioner's alternative contention will, therefore, be given further consideration in this opinion, if such a course should become necessary.

Article 154 of the respondent's Regulations 62 provides in part as follows:

ART. 154. *Worthless securities.*— * * * Bonds purchased since February 28, 1913, when ascertained to be worthless, may be treated as bad debts to the amount actually paid for them. * * *

The above *identical* provision appears in article 154 of Regulations 45, 62, 65 and 69, and article 194 of Regulations 74, which regulations were made and promulgated in pursuance of the Revenue Acts of 1918, 1921, 1924, 1926 and 1928, respectively.

In *Commonwealth Commercial State Bank* v. *Lucas*, 41 Fed. (2d) 111, the taxpayer had purchased during 1916 and 1917 certain Imperial Russian Government 6½ per cent External bonds dated June 18, 1916, and due June 18, 1919 (i. e., of the same issue as purchased by petitioner herein), and certain 5½ per cent Imperial Russian Government bonds dated December 1, 1916, and due December 1, 1921. The officers of the taxpayer in that case, after having been directed several times during the year 1921 by the State Banking Commissioner to write off its books its entire investment in Russian bonds, and after having discussed the matter between themselves during the year 1921, came to the conclusion during that year that the bonds were worthless and should be charged off, which they did, and as a result of such action the taxpayer there deducted the amount

so charged off from its gross income as a bad debt. The Commissioner of Internal Revenue disallowed the deduction. We sustained the Commissioner's action, but on a different basis, namely, that the deduction, if allowable at all, was authorized under the loss provision of the statute, rather than the bad debt provision. See *Commonwealth Federal Savings Bank*, 13 B. T. A. 467, and *First National Bank of St. Paul*, 10 B. T. A. 32. The Court of Appeals of the District of Columbia, however, reversed the Board, and after quoting the provision of article 154 quoted above and citing numerous cases in support of the proposition that the reenactment by Congress, without change, of a statute which had previously received long continued construction by the Department charged with its execution, is an adoption by Congress of the Department's construction, said:

In the present case, the contemporaneous and continued interpretation by the Treasury Department was both equitable and reasonable, and apparently met with the approval of Congress, as otherwise we must assume there would have been a change in the wording of the statute. There is no cogent reason for now adopting the more technical interpretation which the Board has placed upon the statute. It follows, therefore, that the Board erred in not allowing a deduction of 90 per cent of the cost of the bonds as a bad debt.

The applicable statute cited above, provides as follows:

SEC. 214. (a) (7) That in computing net income there shall be allowed as deductions:

\*     \*     \*     \*     \*     \*     \*

Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

As stated in his brief, the respondent " respectfully urges that the bonds here in question were *not* ascertained to be worthless during the taxable year within the meaning of section 214 (a) (7) *supra*, for the reason that the Board has heretofore determined that both the 6½ per cent External Russian bonds and the 5½ per cent Internal Russian bonds were worthless and deductible in the year 1920."

The effect of the respondent's contention is that actual worthlessness and the ascertainment thereof must both occur in the year for which the deduction is claimed. These two factors may occur in the same year, but such a coincidence is not a prerequisite to an allowance for debts ascertained to be worthless. As we said in *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566, 578, " it is not worthlessness which controls, but ascertainment of worthlessness." The same thought was expressed in *First National Bank of St. Paul*, *supra*, wherein we said:

That the bonds might have been worthless prior to 1921 is not material. We are here concerned with the year 1921, and the evidence certainly does not justify the conclusion that in 1921 there was any determination or ascertainment that these bonds were worthless.

And, again, in the *Higginbotham* case, p. 578:

Since a debt may become worthless in one year, but may be ascertained to be worthless in a different year, and since it seems certain that Congress had no intention that the deduction of the same debt should be twice allowed, it becomes incumbent upon the taxpayer whose claimed deduction is disallowed by the Commissioner to establish that he did ascertain the debt to be worthless in the taxable year in which he claims it to be deductible.

The real question here is whether, from the evidence, petitioner in 1922 ascertained the bonds in question to be recoverable only in part, and whether all the surrounding and attending circumstances indicate that her judgment was justified and in accord with what the ordinary prudent person would have done under the same facts and circumstances. *Robert Smith Corporation et al.*, 21 B. T. A. 1400. When we weigh the facts and circumstances present in this case from this viewpoint, we can not escape the conclusion that not only was petitioner entirely justified in doing what she did, but that any other course of action upon these facts which would tend to ask for the deduction in any year other than the taxable year 1922 would not have been warranted.

The principal fact that distinguishes this case from all the other Russian bond cases that have been before us is that in 1919 petitioner, through her son as agent, deposited the 6½ per cent bonds with a bondholder's protective committee. This committee was composed of prominent New York men of finance who had access to files and records that were beyond the practical reach of either the petitioner or her son. The deposit of the bonds with this committee was the most reasonable way open to petitioner to ascertain the facts and realize the greatest possible return on her investment. The bonds were in default when the committee was formed, but no one knew the ultimate outcome. The Russian Government had paid its debts in the past. The repudiation had been made by the revolutionists. There was no telling how long they would be in power. The counter-revolutionists acknowledged the debts. The revolutionists repudiated them. Petitioner decided to wait and be governed by the recommendations of the committee, which, in 1922, reported no hope at all for realizing on the bonds. No plan, arrangement, or course of action by which the principal or interest on the bonds could be collected was offered. It was on the receipt of this unfavorable report from the committee that petitioner for the first time had any definite indication or conclusion that the bonds were uncollectible. Under such circumstances, we think petitioner's

action in charging off her books the amount of $18,450 in question was entirely justified and in accord with the intendment of the statute permitting a deduction for debts ascertained to be worthless and charged off. It follows that the respondent erred in refusing to allow the deduction as claimed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MURDOCK, concurring: I concur in the result because I think the Board was wrong in holding in prior cases (as, for example, *First National Bank of St. Paul, supra,* and *Commonwealth Federal Savings Bank, supra*) that bonds were not debts.